DOCK BRAZIL v. THE WESTERN N. C. RAILROAD CO.

*Negligence—Judge's Charge.*

1. Where the evidence is conflicting, the Judge should leave the question to the jury, with proper instructions on both aspects of the case.

2. It is not negligence, if a conductor requires a fireman, who is competent for that purpose, to work the engine while shifting cars at a depot, in the absence of the engineman.

3. In such case, whether or not there is negligence, depends upon whether the fireman is competent to do such work.

CIVIL ACTION, tried before *Gudger, Judge,* and a jury, at Fall Term, 1885, of HAYWOOD Superior Court.

The action was brought to recover damages for injuries suffered by the plaintiff by the alleged negligent management of the defendant's cars.

The accident, resulting in the loss of the leg of the plaintiff, occurred at the depot at Asheville, and the evidence showed that a freight train had come up the road from Salisbury, and stopped six or seven of its cars on the east side of the county road that crossed the railroad at the depot, and that the remaining cars, about four in number, with the engine, were on the west side of the crossing, and were, at the time of the accident, "shifting," so as to leave some of these last cars on a side track and to attach others, which were on the side track, to the train, and then go on to Warm Springs.

The plaintiff testified that on or about the 16th of February, 1884, he was at the depot at Asheville for the purpose of going to Waynesville, but the train had left before he arrived, and that while yet at the depot the freight train arrived; that he had been employed before that time by the railroad company, but was not then working for them; that as he came out of the depot he met Mr. Hanger, the conductor of the freight train, who asked if witness would go with him, saying he was scarce of hands, and further asked if I had ever been a brakeman; I replied I had "broke" only on gravel trains on two roads; Hanger said to get up on the cars, (the ones west of the crossing), while he got on the cars that were then on the side track and moving up, (west), towards a switch, slowly; Hanger said, "Brake these cars when we get on the main track, so as to stop them first west of the crossing;" I and Hanger got on the cars, and the cars were pulled on the main track; Hanger cut the two cars I was on loose from a gondola, (coal car), and shoved them down the track, (east), towards the six or seven cars composing the balance of the train, which stood east of the crossing; I broke these cars slowly, (i. e., applied the brakes), and stopped them just west of the county road, and about ten or fifteen feet from the balance of the train, which stood on east side of the county road; this was all I had to do, and all that I had been requested to do; I remained on the cars; I had "broken" them; I did not get down, as I had been asked to get up on these cars; I was on the car next the train of same cars east of the crossing; I looked

up the track towards the engine, and saw they had shifted the gondola to the side track, and the engine and two flats were coming towards me on the main track; the switch was about a hundred yards from me; when I left my brake the engine and flats had just started on the main track and were coming towards me slowly; when I got to the other end of the car I was on, I heard the engine puffing fast. I looked, and it seemed as if it would jump the track, and came towards me at the rate of a mile a minute; I then went back to my brake, but before I reached it, the car was knocked from under me, and I fell and was run over by the car and my leg cut off, except a piece of the skin, my other heel injured, and my shoulder also; when the two flats with the engine got on the main track, Shoemaker, the fireman, was in charge of the engine, and Hanger at the brake on one of the flats; some one asked how the engine came to back so fast, and Hanger said it was because the engineer had neglected to shut the injector.

Taylor Yarbrough testified that he was present, saw the engine coming back with full power and full speed, as fast as cars run when going between stations. The engine struck the two flat cars, (gondolas), and they ran up against the car plaintiff was on, and knocked him off; at the time plaintiff was knocked off, he seemed making for the brake.

George R. Hanger, for the defendant, testified that when his train got to the depot, the plaintiff climbed up on a car on which I was standing, and asked for a job. I told him I did not want hands nor did I know that I would. At this time one of my brakemen notified me he would quit work, and my other two went to breakfast, and I had the work of shifting to do. The track from the switch to the crossing is down grade, so that when a car is started from the switch, it will run without the aid of the engine to the crossing. I cut loose and started to the side track, coupled up two box cars and an empty gondola, and pulled them out on the main track, and asked plaintiff, who was on one of the box cars, to ride the two box cars down to the crossing

and stop them before they would hit the other cars. He rode them down and stopped them as I had directed. I then called to him to get down and come and ride one car down the side track. I was 270 feet from him at the time; he was sitting on top of the brake-wheel, with his feet off the body of the car; he did not come; I rode the car on the side track; I told him, using rough language, to get off; he still sat on brake-wheel; I then went on the main line, cut off another car, and told Shoemaker, who was in charge of the engine, to give it a push, which he did, and the car started down the main line, (this car was empty); I called out to plaintiff to get off that wheel or he would get hurt. I was on this car at the brake, the engine following; when I got in twenty or thirty feet of the car plaintiff was on, I called out emphatically to plaintiff to get off or he would be knocked off; he raised up, I applied my brake, and in doing so turned from looking towards plaintiff, and stopped the car as it hit the car plaintiff was on. I did not see plaintiff after I called to him the last time, till after he was hurt. I stopped my car where I wanted it to stop; the engine was driven as I wished it to be, and as it ought to have been run, and as it had been moved before. I have been running as brakeman and conductor five years; there was nothing the matter with the engine, and it carried the train from Asheville to Warm Springs that day. When the car I was on hit car plaintiff was on they were coupled, as I had wished and expected them to be. Plaintiff had time to have got off the car when I called to him from side track before the accident happened. When the accident happened the engine was moving at four to six miles an hour. Plaintiff represented to me he knew all about the business of braking, and could make me a good hand. Shoemaker, the fireman, did the shifting, managing the engine for the shifting; he is a careful man, and did the shifting carefully. Manning, the engineer, had gone to the water-closet at the time; he is a prudent, careful man. There was no unusual speed.

BRAZIL *v.* WESTERN N. C. R. R. Co.

J. F. Shoemaker testified: I did the shifting, Manning saying he had to go to the water-closet; I shifted the cars to the side track, and then got on the main line; cut off two cars; they stopped; I struck the cars and started them; they went on; soon I heard hallooing; I stopped engine, got down, and saw plaintiff was hurt; I had been shifting for six months before; I was training for an engineer, and knew how to manage and control an engine; there was nothing wrong with engine that day.

Frank Haynes testified: Was a brakeman on Hanger's train, and was standing opposite the end of the car plaintiff was on when he fell; was there to couple these cars to the made-up train east of the crossing; I heard Hanger call out to plaintiff three times to get off the car, and he had time to have done so; before he fell, he was sitting on the brake-wheel, talking to some one on the other side of the car from me; plaintiff was in a dangerous place; a safe place would have been on the centre of the top of the car, or holding to the brake; the engine and cars did not approach with unusual speed.

Thos. Miller testified: I am a drayman in town of Asheville; was present at the time; plaintiff was sitting on the brake-wheel talking to some persons on the side opposite me; knew Hanger; heard him halloo, but did not understand what he said until the last time, when he said, "get down off that wheel;" I could have gotten down off the car twice after Hanger hallooed; I was opposite plaintiff; I hallooed to him to get down, and motioned; he had time to have gotten down and hold to the brake, or to hold to the running-board on top the car; the engine did not come back at unusual speed; when I called to plaintiff, he got off the car and started to the other end of the car; I saw no more, as I had to hold my horses; the cars came back pretty fast; engine did not come back; cars made considerable noise when they struck.

A. G. Halyburton testified: Am station agent at Asheville; Hanger is a careful, prudent man and of good character; Shoe-

maker has a good character, and is a prudent, careful fireman; the accident occurred at about 9 o'clock A. M.

The Court charged the jury, that the plaintiff is not entitled to recover, unless he has shown by the preponderance and weight of the evidence, that the injury to himself resulted from the negligent and careless use by them [defendant corporation] of their engine and cars; that if at the time of the injury to the plaintiff, the engine and cars were moving at the rate of a mile a minute, or if they were moving at the rate of speed at which trains move when passing from one station to another station, this would constitute negligence in defendant company; but if at the time of the accident and injury to the plaintiff, the defendant company was using its engine and cars in shifting and making up its train, and were moving at a rate of speed not greater than four or six miles an hour, this would not be negligence on their part; that if the plaintiff had gone upon the cars at the request of Hanger, and had "broke" the two cars and stopped them at the place designated by Hanger, and if this was all the service he had been requested to perform, and if after the performance of this service he remained on the car and sat upon the brake-wheel, and if he was warned by Hanger and others to get down and he did not do so, but remained on the car, and if the car he was on was struck by the gondola or flat cars, and in consequence he was thrown to the ground and hurt, he could not recover for the injury he so received. To these instructions the plaintiff excepted.

The Court gave the following instructions, to which no exception was taken:

That if the jury finds that the conductor, Hanger, commanded or permitted the fireman to run the engine in shifting cars in the absence of the engineer, that this constitutes negligence, unless they shall find that the fireman was competent to perform the duties of an engineer.

The plaintiff requested the following instruction, which the Court refused, and he excepted: That if the jury find that the

conductor undertook to run the train with the fireman on the engine and no brakeman, and undertook to do the braking himself, that these facts constitute negligence, for which the defendant is responsible.

At the request of the plaintiff, the Court gave the jury the following instructions: That if the jury find that "the engine or cars or gondolas were started by the power of the engine down the track towards and against the car on which the plaintiff stood, with rapid and unusual speed, and that plaintiff was knocked off and injured thereby, that then the defendant is responsible, unless plaintiff was at the time guilty of some act which contributed in producing the injury."

There was a verdict for the defendant on the first issue, and the others were not passed upon by the jury, as the Court instructed them, if they found the first issue in the affirmative, to pass on the others, but if they found the first issue in the negative, it would not be necessary to pass on the others.

Rule for a new trial; rule discharged; judgment in favor of defendant, and plaintiff appealed.

*Messrs. Norwood & Smathers*, for the plaintiff.

*Messrs. D. Schenck, Charles Price*, and *Reade, Busbee & Busbee*, for the defendant.

MERRIMON, J.    The testimony was very conflicting—that produced on the part of the plaintiff, tending to prove that the injury sustained by the plaintiff was the result of gross negligence of the defendant—that produced on the part of the latter, tending to prove that such injury was the result of the gross negligence of the plaintiff himself.    The Court, therefore, properly submitted the evidence to the jury in two aspects of the case—one favorable to the plaintiff; the other to the defendant.    In applying the evidence to these aspects, it was the province of the jury to determine its weight, and be governed by a just preponderance one way or the other.    The Court so in substance in-

structed them, and the plaintiff has no reasonable ground of complaint in that respect.

The plaintiff's counsel insisted that "it was sufficient for plaintiff to show that he was injured by an act of defendant, which does not, with the exertion of proper care, ordinarily produce damage."

If it be granted that this is so, in this case the instruction given was that in effect. The Court, putting the plaintiff's view of the case, told the jury in substance, that the plaintiff would be entitled to recover, if the cars were moving at the rate of speed as contended by him, because, in that state of the facts, there was negligence on the part of the defendant.

There was evidence tending to support this view of the case presented to the jury by the Court, favorable to the defendant, and in view of this evidence, it was not erroneous to tell the jury that it would not be negligence to move the cars at a rate of speed not greater than five or six miles an hour. That is not rapid speed—the movement in shifting the cars is short, and at a time when everybody about the cars and track are or ought to be on the alert, and careful to keep out of the way of danger.

If the evidence produced by the defendant was true, then, manifestly, there was negligence on the part of the plaintiff, and his misfortune was largely, if not wholly, attributable to such negligence. The Court properly told the jury, that if the plaintiff was negligent, as the evidence tended to show, he could not recover.

That the conductor requiring the fireman to work the locomotive, and acted as brakeman himself while shifting the cars, was not necessarily negligence on the part of the defendant. This would depend upon the competency of the fireman and the conductor for such service—they might be well fitted for it, and the Court gave the jury proper instructions in this respect.

Taking the charge of the Court to the jury altogether, we think the plaintiff has no just ground of complaint. In one aspect of the evidence, he was grossly negligent himself. The

facts were fairly left to the jury, and they found against the plaintiff as they had the authority to do. The judgment must be affirmed.

No error.	Affirmed.